Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3877 | **DATE** | 9/27/2001 |
| **CASE TITLE** | Pickett vs. Detella, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying plaintiff's motions for judgment as a matter of law and for a new trial (119-1 & 119-2). Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 27 2001 date docketed | |
| | Notified counsel by telephone. | | | 133 |
| | Docketing to mail notices. | | mw docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 9/27/2001 date mailed notice | |
| MPJ | courtroom deputy's initials | 01 SEP 27 AM 9:10 Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OZZIE PICKETT,　　　　　　　　　　　　)
Reg. No. N-50240,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　　)　　No.　98 C 3877
　　　　　　　　　　　　　　　　　　　　)
GEORGE E. DETELLA, et al.,　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.

**DOCKETED**
SEP 2 7 2001

## MEMORANDUM OPINION AND ORDER

Ozzie Pickett, the plaintiff in this civil rights case, is an inmate in the custody of the Illinois Department of Corrections, currently incarcerated at the "supermax" maximum security prison in Tamms, Illinois. This lawsuit arose out of events that occurred in 1997 and 1998 while Mr. Pickett was at the Stateville Correctional Center in Joliet. Mr. Pickett alleged that the defendants, who were guards at Stateville, confined him in inhumane conditions, used excessive force against him, and made false statements, leading to wrongful disciplinary action, including a transfer to Tamms, where conditions are harsh and he is far from his family. He sued under 42 U.S.C. § 1983 for violations of his constitutional rights, and received a trial by jury in January 2001, which resulted in a verdict for the defendants on all counts. Mr. Pickett moves for judgment as a matter of law under Fed. R. Civ. P. 50(b) or, in the alternative, for a new trial under Rule 59(a). The

motions are denied for the reasons stated in this opinion.

I.

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In evaluating a Rule 50 motion, I ascertain whether there exists "'any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Pope v. Shafer,* 86 F.3d 90, 91 (7th Cir. 1996) (citations omitted) (prisoner civil rights context). I view the evidence in the light most favorable to the defendants and draw all reasonable inferences in their favor. *Id.*

A first issue concerns whether Mr. Pickett moved for judgment as a matter of law in a timely manner. Rule 50(b) requires that the motion "be made at the close of all evidence in order to be preserved for post-trial consideration." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353, 1364 (7th Cir. 1996). Mr. Pickett made his Rule 50 motion at the close of the defendants' case. He did not renew the motion after a brief rebuttal. The Seventh Circuit has held that in this circumstance, however, the motion cannot be renewed after trial. *Eastern Natural Gas Corp. v. Aluminum Co. of America,* 126 F.3d 996, 1000 (7th Cir. 1997).

II.

Mr. Pickett also moves for a new trial under Fed. R. Civ. P. 59(a) ("A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."). A new trial should be granted when: (1) the verdict is against the weight of the evidence, (2) is either excessive or inadequate, (3) where probative evidence is newly discovered, (4) where conduct by the court, counsel or the jury improperly influences the deliberative process, or (5) if for any other reasons the trial was not fair to the moving party. *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir. 1996); *Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992). Mr. Pickett argues that a new trial should be granted in this case because the verdict was against the weight of the evidence, the court erroneously excluded an exhibit, and conduct by counsel improperly influenced the deliberative process.

1.

Mr. Pickett's first claim was an Eighth Amendment claim, alleging that Officer Lindsay was "deliberately indifferent" to his cell conditions by housing him in a cell with a broken window during a period of sub-freezing temperatures. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996) (standard for Eighth Amendment violation). To raise an Eighth Amendment issue, the official's

-3-

conduct must be criminally reckless; mere or even gross negligence will not do. *Id.* Mr. Pickett argues that there was no testimony that contradicted his own testimony about his confinement under those conditions. But, first, that is not conclusive. "A fact-finder does not have to accept unrebutted evidence as correct, but can instead draw his own conclusions from [the] evidence." *Meader v. United States,* 881 F.2d 1056, 1060 (11th Cir. 1989) (citing *Luria Bros. & Co. v. Pielet Bros. Scrap Iron & Metal, Inc.*, 600 F.2d 103, 115 (7th Cir. 1979)) (damages computations contexts). The jury might reasonably have accepted Mr. Pickett's testimony, but concluded that any wrongful conditions of confinement were imposed negligently;[1] or it might have simply disbelieved him, even if his testimony was uncontradicted.

Second, Officer DuVall testified that she inspected the cell and that her log showed that the window was fixed when Mr. Pickett was assigned there, and Captain Luther Manning testified that he never observed snow in the cell and that the window was not broken there. A rational jury might have believed them, and there was at least enough disagreement in the evidence to warrant the jury's conclusion.

---

[1] Defendants had admitted that during this time Mr. Pickett was housed in a "condemned cell," as one of their documents referred to the cell. This did not mean they agreed that his conditions of confinement violated the Eighth Amendment, which they contested at trial.

-4-

2.

Mr. Pickett alleged that the defendants used excessive force on several occasions. The first incident, in June 1997, involved Officer Lindsay shutting Mr. Pickett's hands in the chuckhole of his cell when he blocked the hole, which Mr. Pickett admitted was in violation of regulations (the "chuckhole" incident). In July 1997, Mr. Pickett claimed that he was beaten and abused by four defendant officers while he was handcuffed in a bullpen (the "bullpen" incident). In the third incident, in October 1997, he claims that he was handcuffed, then attacked by several officers in a shower stall, after he had an altercation with a guard who refused to provide him with a razor (the "shower" incident). In the final incident, in April 1998, Mr. Pickett claims that he was unjustifiably confined in a "strip cell" as punishment for refusing to comply with orders not to kick his cell door, which he denied having done at all (the "door" incident).

The Supreme Court has rejected the "notion that all excessive force claims brought under § 1983 are governed by a single generic standard," *Graham v. Connor*, 490 U.S. 386, 393 (1989), and has instructed that "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Id.* at 394. This was an excessive force claim based on the Eighth Amendment. Accordingly, I instructed the jury on the factors stated in *Davis v. Lane*, 814 F.2d 397 (7th Cir.

1987), under which an Eighth Amendment excessive force claim is evaluated with reference to: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm. *Id.* at 400. Mr. Pickett does not object to the instruction, but argues that there was no evidence in the incidents in question of any need for force, or that the amount of force was proportionate, or that efforts were made to avoid using force.

In the "chuckhole" incident of June 1997 and the "door" incident of April 1998, Mr. Pickett says that he posed no threat to defendants because he was in a locked cell; in the "bullpen" July 1997, he was handcuffed and surrounded by four officers, and in the "door" incident of October 1997, he says that did not touch any of the officers. Mr. Pickett does not cite any authority that a prison guard may not use force against prisoners in locked cells or handcuffs if necessary to maintain discipline. The contrary is true: for example, under appropriate circumstances use of mace to "subdue recalcitrant prisoners" is not cruel and unusual punishment even where an "inmate is locked in his prison cell or is in handcuffs." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (inmate in mesh cage refused to submit to body cavity search). As to the chuckhole incident, Mr. Pickett had his hands through the chuckhole in

violation of regulations, and Officer Lindsay reported that Mr. Pickett had thrown a styrofoam tray at him; Mr. Pickett denies this, but a jury could have believed the officer. The injury was not serious. Mr. Pickett testified that he was treated with iodine, ice packs, and Tylenol. *See Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994) (degree of injury is relevant to determining extremeness of force used; a "minor injury" supports a conclusion of "a de minimis use of force not intended to cause pain or injury").

In the "bullpen" incident, the jury could have believed that Mr. Pickett lunged at Officer Lindsay, threatened to kick him, and asked to have his handcuffs off to fight him. There is a dispute about how Mr. Pickett came to have one handcuff off in the "shower" incident or whether he attempted to use the cuffs as a weapon, but even under his version he refused to surrender his cuffs, and it was up to the jury to decide whether the officer's use of force under the circumstances was excessive. With the "door" incident the jury might have accepted that Mr. Pickett created a disturbance and disobeyed direct orders. The evidence is not so one-sided that a jury could not conclude that the use and amount of force was not reasonably necessary in the circumstances. The Seventh Circuit has authorized reasonably necessary force where "an inmate cannot be persuaded to obey the order, [because] some means must be used to compel compliance." *Gibbons v. Higgins*, No. 94-2636, 1995 WL 761743, at *8 (7th Cir. Dec. 20, 1995)(unpublished order).

3.

Mr. Pickett's third claim was that Officers Lindsay and Hall lied about the evidence on which he was disciplined for the June and October 1997 incidents. Insofar as credibility was an issue, the jury must have believed the officers, and it is the job of the jury to make such determinations. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1046 (7th Cir. 1998) ("'The jurors, and they alone, are to judge of the facts, and weigh the evidence.'"). Mr. Pickett complains, with respect to the June incident, that Officer Lindsay added the statement that Mr. Pickett had thrown a styrofoam tray at him later, when he prepared the discipline report, and not in his initial report. While the jury might have concluded from this that Lindsay was lying, it is not proof that he lied.

Mr. Pickett also complains that Officer Hall lied when he said that Mr. Pickett assaulted him, because Officer Hall also said that he was not injured.[2] With respect to this incident, Mr. Pickett argues that I committed prejudicial error when I excluded exhibit 36, consisting of a disciplinary summary regarding the October 24, 1997 shower incident in which an official summarized the statements of witnesses, including the inmate's witnesses. In the pretrial order Mr. Pickett's exhibit 36 consisted not only of this summary but summaries and reports concerning other incidents involving Mr.

---

[2] The importance of this is that Mr. Pickett was found to have assaulted Officer Hall. He was later transferred to Tamms, at least in part because of the two staff assaults at issue here.

Pickett at Stateville and other documents having to do with the shower incident. The defendants did not object to this exhibit at pretrial. At trial, Mr. Pickett wanted to introduce not his whole disciplinary record, but rather the summary of the shower incident of October 24, 1997. The point of this proffer was to impeach the testimony of Officer Hall. Mr. Pickett testified that when he went to the shower he was refused a razor and that in order to see a lieutenant about his grievance after Hall had removed one handcuff Mr. Pickett stepped back, refusing removal of the second. He said Hall left for "a couple [of] seconds" and then came back and grabbed him, slamming him to the floor, at which point other officers joined in punching him.

Officer Hall testified that he left Mr. Pickett alone to shower for 15 minutes, and when he returned to get Mr. Pickett out of the shower, Mr. Pickett had slipped his cuffs and was swinging at the officer. However, according to the disciplinary summary, another inmate, Mr. Phillips, stated that Officer Hall put Mr. Pickett in the shower, and Mr. Pickett refused to "give up" his cuffs when the officer attempted to take them off, and asked to see a Lieutenant. Mr. Phillips was reported to say that Hall left, returned "in a few minutes," and then Mr. Phillips heard the shower door open and a scuffle break out between Mr. Pickett and Officer Hall. This evidence could have effectively impeached Officer Hall's testimony; if the jury had heard and believed it, it might rationally have

accepted Mr. Pickett's version of the story and decided that Officer Hall was lying, at least about his claim that Mr. Pickett had slipped his handcuff.

The defendants objected on grounds of "completeness," saying that they wanted to introduce the complete record (all parts of exhibit 36) as to this incident. That would have included the finding of the disciplinary committee against Mr. Pickett. Mr. Pickett objected that including the disciplinary finding would be improper, and defendants argued that inmate Phillips' statement was hearsay. It was, and not subject to any exception to which anyone has pointed, but defendants had agreed to allow exhibit 36 in evidence. But defendants' agreement might well have been because the entire exhibit (or even that concerning this event alone, which is all that the parties were arguing about) included the Department of Corrections' finding. Defendants could not fairly be held to have waived the right to object to one part of an exhibit when Mr. Pickett withdrew his own agreement to the introduction of the entire exhibit.

4.

Mr. Pickett also argues that he should be given a new trial because counsel for defendant made inappropriate and inaccurate comments in closing argument. To warrant a new trial, "[s]tatements made during closing argument must be plainly unwarranted and clearly injurious." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 730 (7th Cir.

1995), quoting *Grucca v. Alpha Therapeutic Corp.*, 51 F.3d 638, 644 (7th Cir. 1995).

Mr. Pickett complains that during argument, defendants' counsel referred to him as a "rule violator" with a "long disciplinary history," that he was in the maximum security unit at Stateville "for a reason," and that he was "out of control." The evidence in the record included Mr. Pickett's own testimony (to which there had been no objection) that he had been transferred to the segregation unit at Stateville from the segregation unit at Menard and that an inmate went to segregation because he was found to have violated prison rules. Thus, while Mr. Pickett's disciplinary history had been excluded from evidence, there was support in the record for the statement that he was a rule violator. The crimes for which he was in prison were also of record. The comments therefore were entirely different from the situation in *Hillard v. Hargraves*, 197 F.R.D. 358, 360 (N.D. Ill. 2000), to which Mr. Pickett refers, in which I granted a new trial to a *pro se* litigant who was in Cook County jail and had not been convicted of any crime in part because of remarks that implied facts that were entirely unsupported by the record in the case. The comment about Mr. Pickett's "long disciplinary history" was improper given my prior orders but it does not rise to the level of being "clearly injurious" in the context of this case. The statement that Mr. Pickett was "out of control" was the kind of argument that any juror would recognize as such. Mr. Pickett

complains as well that defense counsel's argument that the State of Illinois and Department of Corrections[3] were not defendants gave the impression that the state was not indemnifying the defendants, contrary to fact, but counsel did not object at the time or ask to clarify the situation. The statements should not have been made but I conclude they were unlikely to have resulted in the verdict for defendants. Mr. Pickett also complains that the evidence did not support the argument that he had a blanket while in the cell about which he complains or that the temperature was what defense counsel argued. Mr. Pickett's counsel did argue to the contrary during her rebuttal argument and I instructed the jury that arguments were not evidence. Again, in the context of this case, the statements do not warrant a new trial.

### III.

The question on Mr. Pickett's post trial motions is whether the verdict is against the manifest weight of the evidence or prejudicial error occurred. *Bankcard America v. Universal Bancard Systems*, 203 F.3d 477, 480 (7th Cir. 2000). Although different fact finders might have reached different conclusions, the verdict was

---

[3] As Mr. Pickett notes, not only was there no legitimate reason for defense counsel's remark in this regard, but it is somewhat ironic considering the amount of time the Department of Corrections spent during this trial, which included an improper *ex parte* telephone call to me, motions that misstated facts, and a mandamus petition, all to have Mr. Pickett shackled (he was in fact an orderly, cooperative plaintiff), which had as its principal effect the distraction of everyone from the trial of the case.

not against the manifest weight of the evidence. I also conclude that no prejudicial error requires a new trial. I DENY Mr. Pickett's motions for judgment as a matter of law and motion for a new trial.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: September 27, 2001